**EAST CHILLIWACK FRUIT GROWERS CO–OPERATIVE, Plaintiff,**

v.

**UNITED STATES, United States Department of Commerce, and Malcolm Baldridge, in his Official Capacity as Secretary of Commerce, Defendants,**

**and**

**Washington Red Raspberry Commission, Red Raspberry Committee of the Oregon Caneberry Commission, Red Raspberry Committee of the Northwest Food Processors Association, Red Raspberry Member Group of the American Frozen Food Institute, Washington Red Raspberry Growers Association, North Willamette Horticultural Society, Rader Farms, Ron Roberts, and Shuksan Frozen Foods, Inc., Intervenor-Defendants.**

Court No. 85–07–00978.

United States Court of International Trade.

Feb. 13, 1987.

Bogle & Gates, Joel R. Junker, Christopher N. Weiss and Peter L. Miller, Seattle, Wash., for plaintiff.

Richard K. Willard, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, J. Kevin Horgan; and Office of Asst. General Counsel for Import Admin., U.S. Dept. of Commerce, Eileen P. Shannon, Washington, D.C., for defendants.

Kilpatrick & Cody, Joseph W. Dorn and Anthony H. Anikeeff, Washington, D.C., for the intervenor-defendants.

### OPINION & ORDER

AQUILINO, Judge:

As a result of its final determination of sales at less than fair value in *Red Raspberries from Canada*, 50 Fed.Reg. 19,768 (May 10, 1985), the International Trade Administration, U.S. Department of Commerce ("ITA") directed the Customs Service to continue to suspend liquidation of involved entries of raspberries by the plaintiff cooperative, which is an association of growers of fruits and vegetables in British Columbia who agree to deliver their produce to it for processing or packing and marketing. A cash deposit equal to an estimated weighted-average dumping margin of 3.39 percent was required.

The plaintiff has moved pursuant to CIT Rule 56.1 for judgment upon the agency record, alleging that (a) the ITA failed to convert plaintiff's foreign market value from Canadian into U.S. dollar terms prior to comparing the cooperative's foreign market value to its United States sales prices; (b) the ITA improperly decided to construct a foreign market value for the plaintiff based on the agency's erroneous comparison of home market sales prices, which excluded packing costs, to cost of production figures, which included packing costs; (c) the ITA improperly imputed finance costs to the plaintiff without regard to the fact that it held its inventory for its juice and processing operations and not for

bulk packing; and (d) the ITA improperly refused to disclose to the plaintiff and make part of the record agency recalculations made subsequent to the ITA's final determination.

In response, the defendants "concede that certain mathematical errors were committed in the process of calculating antidumping duty rates in the final determination"[1] and that "remand of this determination ... is the only way of assuring an accurate, efficient, economical and lawful redetermination of the antidumping duty margin." Defendants' Memorandum, p. 22. Further:

> To the best of the Department [of Commerce]'s knowledge at this time, the Department committed the specific computational errors which plaintiff has alleged, *i.e.*, the misapplication of the exchange rate to East Chilliwack's constructed value, and the comparison of the company's home market sales from which packing costs had been deducted to a cost of production which included packing costs. However, the Department does not concede that corrections of these and other errors will lead to the results which plaintiff has alleged: specifically, that all of East Chilliwack's sales to the United States would be found to be above foreign market value, and that constructed value would not be used as a basis of the company's foreign market value. The Department is unable to speculate upon the actual results of the correction of mathematical errors until such corrections have been carried out upon remand of this determination. *Id.* at 23.

### I

■ Of the two disputed questions remaining, the one claiming unlawful failure to disclose ITA revised calculations predates the present motion. That is, after the parties' pleadings had joined issue on the matter, the plaintiff interposed a mo-

1. Memorandum of Points and Authorities in Support of Defendants' Partial Opposition to Plaintiff's Motion for Judgment Upon the Agen-

cy Record [hereinafter cited as "Defendants' Memorandum"], p. 22.

tion to complete the administrative record "by including in the record all revised calculations relied upon by the ITA ..., including revised calculations emanating from calculation errors discovered on June 26, 1985", to quote from the order proposed by plaintiff's counsel. The defendants opposed the motion, essentially on the ground that the revised calculations, "even if they do exist" [2], could not have been, and were not, presented to or obtained by the ITA during the course of the administrative proceeding within the meaning of 19 U.S.C. § 1516a(b)(2)(A)(i). After due deliberation, this court denied plaintiff's motion.

In their papers in support of plaintiff's motion for judgment on the record, counsel take issue with the court's decision, relying now on *Blaw Knox Construction Equipment Co. v. United States*, 8 CIT 210, 596 F.Supp. 476 (1984). That case, however, stands simply for the proposition that the ITA has the authority to issue corrected instructions to Customs regarding cash deposit requirements in conjunction with the agency's annual review pursuant to 19 U.S.C. § 1675 of a final determination of dumping.[3]

The defendants choose to rest on the May 1985 final determination and the record compiled by the ITA beforehand. That is, whatever second guesses may have been made thereafter have not resulted, to the court's knowledge, in any modification of that determination. Furthermore, in compliance with CIT Rule 71(a)(3), the ITA has submitted a certification of completeness of the record filed with the court.

Only in rare or exceptional cases will litigants in plaintiff's position be permitted to go beyond such a certification. *See, e.g., National Corn Growers Association v. Baker*, 9 CIT ——, Slip Op. 85–109 (Oct. 9, 1985). *See also National Corn Growers*

*Association v. Baker*, 10 CIT ——, 636 F.Supp. 921, 927–30 (1986).

The plaintiff makes no showing that the facts and circumstances of this action entitle it to the extraordinary relief requested.

## II

The other disputed substantive issue centers on the ITA's use of constructed value to determine the foreign market value of the merchandise investigated, namely, "fresh and frozen red raspberries packed in bulk containers and suitable for further processing" [4], for the period July 1, 1983 to June 30, 1984, in particular, the agency's computation of "general expenses" within the meaning of 19 U.S.C. § 1677b(e)(1)(B) and 19 C.F.R. § 353.6(a)(2) for the plaintiff to include "inventory carrying charges".

The position of the cooperative before the ITA and now this court is that, while it had been a bulk packer of raspberries, in 1981 it embarked on a program to develop new berry juice and concentrate products. Delay in the start-up of a new juice plant, however, resulted in a significant inventory carryover and an "inability of the developing juice and concentrate market to absorb the amount of processed product which would have been expected if the product had been on the market when originally scheduled." [5] Moreover, there was a bumper crop of raspberries in 1983, which added to the cooperative's stockpile and led it to market some of that inventory in the manner which came under investigation by the ITA. The plaintiff argues from these facts that the ITA wrongfully imputed

> finance (carrying) costs for inventory and receivables for raspberry inventory intended for East Chilliwack's juice and

---

2. Defendants' Opposition to Plaintiff's Motion to Complete Administrative Record, p. 1. Footnote 2 on page 4 of that document states that the "Commerce Department has been unable to locate the 'revised calculations' which plaintiff alleges were performed by ITA personnel."

3. This court notes in passing that the change merely entailed posting of deposits to cover only those sales determined to constitute dumping and not those fair-value sales originally sub-

ject to a weighted-average margin engendered exclusively by the former.

4. 50 Fed.Reg. at 19,768.

5. Confidential Document 26 (Processing Costs of Production, East Chilliwack Fruit Growers' Co-operative Revised Submission, p. 1 (Feb. 8, 1985)).

concentrate operations. However, for the purpose of the product under investigation—bulk-packed raspberries—East Chilliwack's finance costs, if any, should be only those that would have been incurred by East Chilliwack in the normal course of making bulk sales as if East Chilliwack were a bulk packer. If East Chilliwack had been a bulk packer, it would have had no need to hold its inventory as long as it did for its juice and concentrate operations.[6]

Counsel refine this argument further in their reply brief by contending that plaintiff's costs need not be comparable to those of the other bulk-packers, only that the costs be segregated from costs not incurred for the export activity at issue.

Defendants' response is fourfold: First, the cooperative actually experienced finance expenses as a result of holding raspberries from the preceding year in inventory, and the ITA therefore did allocate a portion thereof to the subject merchandise. Secondly, the expense was related to the bulk-packed raspberries, not other product lines, regardless of whether or not that fruit was originally destined for another process. Third, the berries in question were sold in the "ordinary course of trade" within the meaning of 19 U.S.C. §§ 1677(15) and 1677b(e)(1)(B). And finally, the fact that the cooperative's operations were aimed primarily at processing juice and concentrate did not render its sales of bulk-packed fruit outside the ordinary course of trade, especially when those sales proved to be a major part of the trade. *See generally* Defendants' Memorandum, pp. 10–22.

After consideration of the foregoing competing arguments and comparing them with the record, this court is unable either to conclude that the final determination is not in accordance with law on this issue or to find that the approach taken by the ITA is unsupported by substantial evidence.

■ The law is that, when constructed value is employed to determine foreign market value of merchandise in accordance with 19 U.S.C. § 1677b, that value shall include an

> amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration....[7]

One such general expense is the cost of financing. The plaintiff does not dispute that this is the governing rule. Rather, the "high finance charges to uncharacteristic export sales at the end of the 1983–84 season should be adjusted to reflect ordinary course of trade practices." Plaintiff's Reply Memorandum, p. 5.

General expenses, as the term indicates, are incurred in the overall operation of an enterprise and therefore are normally allocable across the full range of its business. However, the defendants will apparently link finance costs to a particular product when they are able to attribute those costs specifically to that product. *See, e.g., Titanium Sponge from Japan*, 49 Fed.Reg. 38,687, 38,689 (Oct. 1, 1984). But, the ITA's investigation of the cooperative herein determined that its cost-accounting system did not accumulate general expenses by product. *See, e.g.*, RecDoc 92 at 8.

■ This fact has led plaintiff's counsel to argue as quoted above, to wit, that its finance costs "should be only those that would have been incurred by East Chilliwack in the normal course of making bulk sales as if East Chilliwack were a bulk packer." This contention, however, cannot and does not blur the facts evidenced in the record (1) that the plaintiff did export to the United States the merchandise under investigation and (2) that it did incur finance costs in carrying those raspberries prior to export in inventory, whatever the original intent for doing so may have been. That is, the merchandise was sold in the ordinary course of the raspberry business by the plaintiff. Defendants' Memorandum states (at page 20):

---

6. Memorandum of East Chilliwack Fruit Growers Co-Operative in Support of Plaintiff's Motion for Judgment Upon the Agency Record, p. 23.

7. 19 U.S.C. § 1677b(e)(1)(B); 19 C.F.R. § 353.-6(a)(2).

When the Department examines whether sales are in the ordinary course of trade, it looks to whether those sales are made under conditions that are normal for the *product* that is being sold. Whether or not the *seller* ordinarily sells the subject product is irrelevant. [emphasis in original]

The court concludes that this approach is reasonable and in accordance with law. Moreover, from the evidence at hand, the court does not find that plaintiff's activities were out of the ordinary.

### III

In challenging the ITA's nonallocation of finance costs, the plaintiff referred with approval in its memorandum (at page 22) to the agency's allocation of the costs of storing the raspberries in question. The intervenor-defendants responded to this reference with a claim that the ITA's calculation of those storage costs was erroneous. Their brief in opposition to plaintiff's motion for judgment on the record requests that the court reverse and remand the storage-cost calculations.

This reaction has engendered a motion by the plaintiff to "strike intervenor's cross-claim regarding storage costs" which is joined in by the defendants. The intervenor-defendants have countered with a motion for leave to file an amended answer to plaintiff's amended complaint.[8] Their original answer, which was filed months after commencement of this action along with their motion for leave to intervene as parties defendant, denied the averments of the complaint (repeated verbatim in the amended complaint) contesting the ITA's calculation of storage costs.[9] As pointed out above, those costs are not now challenged in plaintiff's motion for judgment,

allegedly as a result of counsel's review of the record.[10]

The foregoing papers, some presented prior to, others after, the court's hearing all sides on the merits, leave little doubt that the intervenor-defendants seek to assert a cross-claim. CIT Rule 15(b) permits amendments to conform to the evidence, but this rule applies essentially to evidence that is adduced during a trial in this Court of International Trade and not to evidence adduced in another proceeding. Indeed, as indicated in point I *supra,* the court's review of an action such as this is restricted to the administrative record as described in 19 U.S.C. § 1516a(b)(2).

In *Nakajima All Co., Ltd. v. United States,* 2 CIT 170 (1981) [Available on WESTLAW DCTU Database], the court held that an intervening party cannot contest an antidumping-duty order through a cross-claim which does not comport with the time limitations imposed by 19 U.S.C. § 1516a(a). *See also Fuji Electric Co., Ltd. v. United States,* 7 CIT 247, 595 F.Supp. 1152 (1984).

In *Nakajima,* as here, the cross-claims were sought to be interposed months after commencement of the actions. Moreover, the intervenor-defendants herein were the petitioners before the ITA who themselves brought timely actions to contest the same final agency determination *sub nom. Washington Red Raspberry Commission v. United States,* CIT Nos. 85–06–00789 and 85–06–00865. Of course, neither of those complaints contain the claim raised now, and intervenor-defendants' able counsel have offered reasons for their belated position, but they do not surmount the strict standards governing the Court of International Trade's jurisdiction of an ac-

---

**8.** The court had granted an unopposed motion by the plaintiff to amend its complaint to include its fourth alleged cause of action.

**9.** Intervenor-defendants' proposed amended answer would modify their outright denial of the allegations of paragraph 24 of the complaint "except to admit that the ITA did not calculate East Chilliwack's costs of storage so as to reflect all such costs for sales in the normal course of commerce." Their proposed amendments also

entail concomitant modification of their denial of paragraph 25 and assertion of a specific claim for relief against the defendants for their alleged erroneous computation of the costs now questioned.

**10.** *See* Memorandum of East Chilliwack Fruit Growers Co-Operative in Support of Motion to Strike Intervenor's Cross-Claim Regarding Storage Costs, p. 2.

tion such as this. As the court stated in *Georgetown Steel Corporation v. United States*, 801 F.2d 1308, 1312 (Fed.Cir.1986):

> Since section 1516a(a)(2)(A) specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions.... If a litigant fails to comply with the terms upon which the United States has consented to be sued, the court has no "jurisdiction to entertain the suit." [citations omitted]

## IV

The plaintiff has now presented the court with an application for a preliminary injunction based upon a realization that the defendants carried out an annual review pursuant to 19 U.S.C. § 1675 of the antidumping-duty order challenged herein and that the review led to a direction to Customs to liquidate plaintiff's entries at the deposit rate. Apparently, the Service carried out its instructions.

Plaintiff's application states that it chose not to attempt to participate in the annual review because (1) it was anticipated that the court's above decision in points I and II "would have been rendered before completion of the annual review and the liquidation of any entries from that review" and (2) "the dumping rate applied to East Chilliwack in the preliminary affirmative determination is sufficiently low that contesting it by way of review would not be justified economically by full participation in the review process". Affidavit of Joel R. Junker, Esq., para. 5. The defendants respond in sum and substance that the application is too late for the relief requested to have any impact on the Customs liquidations. The court concurs.

In *Bomont Industries v. United States*, 10 CIT ——, 638 F.Supp. 1334 (1986), this court overruled a government contention that an injunction suspending liquidation would be "meaningless", albeit in an action challenging a final negative ITA determination of sales at less than fair value. The

decision, however, was based upon the plain meaning of 19 U.S.C. § 1516a(c) and (e), which also apply to annual reviews pursuant to section 1675. *See* 19 U.S.C. § 1516a(a)(2)(B)(iii). In *Zenith Radio Corporation v. United States*, 710 F.2d 806, 810 (Fed.Cir.1983), the court concluded that the consequences of liquidation in a situation such as this "do constitute irreparable harm." The proper method to forestall those consequences is timely application for an injunction.

▪ When a party moves in time, this court can provide effective relief in appropriate cases. *See, e.g., Nakajima All Co., Ltd. v. United States*, Court No. 87–01–00089 (preliminary injunction granted Feb. 5, 1987); *Smith Corona Corporation v. United States*, Court No. 87–02–00157 (temporary restraining order entered Feb. 6, 1987); *Krupp Stahl A.G. v. United States*, Court No. 87–02–00199 (preliminary injunction granted Feb. 12, 1987).

▪ Plaintiff's application herein reflects a lost opportunity. But even if it had been made early enough, the court is required to consider all four traditional criteria for grant of extraordinary equitable relief, not just irreparable harm. *See, e.g., S.J. Stile Associates Ltd. v. Snyder*, 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981). One of those other requirements, of course, is a showing of likelihood of success on the merits. While the court does not express any view on the ultimate effect of the points conceded by the defendants, this opinion shows that the plaintiff has failed to carry its burden on the issues contested by them.

\*    \*    \*

Now, therefore, in view of the foregoing, it is

ORDERED that plaintiff's motion pursuant to CIT Rule 56.1 for judgment upon the agency record be, and it hereby is, granted in part and denied in part in accordance with the above opinion; and it is further

ORDERED that this matter be, and it hereby is, remanded to the International Trade Administration, U.S. Department of Commerce for reconsideration of the issues

**506**

raised by the plaintiff in parts (a) and (b) of its aforesaid motion; and it is further hereby

ORDERED that the defendants file any determination of the issues remanded within 45 days hereof, that the plaintiff have 15 days thereafter in which to respond and that the defendants have ten days to reply thereto; and it is further

ORDERED that plaintiff's motion to strike intervenor-defendants' cross-claim regarding storage costs be, and it hereby is, granted; and it is further

ORDERED that intervenor-defendants' motion for leave to file a first amended answer be, and it hereby is, denied; and it is further

ORDERED that plaintiff's application for a preliminary injunction be, and it hereby is, denied.