896 F. Supp. 1224

FORD MOTOR CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 92–03–00164

(Dated July 18, 1995)

*Stein Shostak Shostak & O'Hara (S. Richard Shostak), Ford Motor Company (C. Harry Gibson),* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General of the United States; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *A. David Lafer,* Senior Trial Counsel, *(Michael S. Kane),* for defendant.

## OPINION

CARMAN, *Judge:* Before the Court is plaintiff's application for an order permitting the filing of supplemental pleadings to allow plaintiff to benefit from the recent decision by this Court in *Intercargo Ins. Co. v. United States,* Slip Op. 95–37 (Mar. 9, 1995), *appeal docketed,* No. 95–1344 (Fed. Cir. May 4, 1995). (Pl.'s Mot. for Filing Supplemental Pleadings and Setting Aside Summ. J. Submission (Pl.'s Mot.) at 1.) Plaintiff also moves for the setting aside of plaintiff's summary judgment papers "for the sole purpose of taking additional evidence to establish the applicability of the *Intercargo* decision * * * in the instant case." *(Id.)* Defendant opposes plaintiff's application as "adverse to the interests of justice" and "barred by the statute of limitations and general principles governing amendment of pleadings." (Def.'s Opp'n to Ford's Mot. to Amend Compl. (Def.'s Resp.) at 2.) The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

Plaintiff Ford Motor Company (Ford), brought this action seeking reliquidation of eleven entries of certain foreign engines and transmissions installed into automotive trucks in a foreign trade subzone (FTSZ), and a refund of the excess duties paid in the subject entries, with interest. The assessments arose from liquidations in 1989 of the subject entries, which were filed by Ford between December 30, 1985, and February 7, 1986, when the subject engines and transmissions entered the customs territory of the United States from the FTSZ. According to defendant, the United States Customs Service (Customs) sent notices of extension of liquidation to Ford and its surety for each of the eleven entries in 1986, 1987, and 1988, pursuant to 19 U.S.C. § 1504(b). Ford insists neither it nor its surety ever received any notices of extension or suspension of liquidation concerning these eleven entries.

On December 1, 1989, Customs liquidated the eleven entries with changes from the entered classifications and rates of duty to assessments of 25% *ad valorem* under Item 945.69, Tariff Schedules of the United States (TSUS), the provision for trucks. Ford filed a protest and application for further review on February 26, 1990, claiming the subject merchandise should have been assessed with duty at the entered rates set out in the entries filed when the merchandise entered the U.S.

customs territory from the FTSZ as "internal combustion engines for automobiles" under Item 660.48, TSUS, and as "other parts of motor vehicles" under Item 692.32, TSUS. Customs denied Ford's protest on September 19, 1991.

Ford filed its complaint on June 12, 1992, and subsequently amended the complaint two months later to correct typographical errors. In its amended complaint, Ford raises two causes of action. The first claim, summarized in paragraph twelve of the complaint, alleges,

> [b]ecause there were no legal extensions or suspensions of the liquidations of the subject 11 entries covering the engines and transmissions described [above] * * * one year after their dates of entry, said entries are deemed liquidated at the entered rates and amounts of duties assessed at the time of their filings, and the purported liquidations in 1989 * * * are illegal, null, and void * * *.

(Am. Compl. ¶ 12.) The second cause of action relates to alleged clerical errors in Ford's Applications for Admission used to enter the subject merchandise into the FTSZ. In the second cause of action, Ford claims

> [t]he checking of the wrong boxes by FORD's employee in the Applications for Admission into the FTSZ constitutes clerical errors, mistakes of fact, and/or inadvertences made by FORD, which are properly correctable under 19 U.S.C. § 1520(c)(1) because they meet all the requirements of that provision * * *.

*(Id.* ¶ 28.)

Discovery began soon after Ford filed its amended complaint in August 1992 and continued at least through September 1994. At one point during discovery, Ford requested defendant identify the grounds for issuance of any of the notices of extension of liquidation of the entries at issue. *(See* Def.'s Resps. to Pl.'s Second Set of Interrogs. at 18–19, *reprinted in* Pl.'s Mem. in Supp. of Mot. to Compel Answers to Interrogs. (Pl.'s Mot. to Compel) Doc. 2.) Defendant responded that "[t]here was an ongoing investigation regarding an alleged violation of 19 U.S.C. § 1592." *(Id.* at 19.) Ford then sought additional information as to the "legal or factual basis of the three Extensions or Suspensions of each of the liquidations of the subject entries." (Def.'s Resps. to Pl.'s Third Set of Interrogs. at 6, *reprinted in* Pl.'s Mot. to Compel Doc. 1.) Defendant repeated its earlier response referring to the ongoing § 1592 investigation. *(Id.* at 9.)

In a subsequent discovery dispute arising in March 1994, Ford moved to compel defendant to answer Ford's interrogatories. In its papers, Ford characterized its first cause of action as challenging the

> legality and sufficiency of the Notices of Extension of Liquidations on two grounds:
> a) That the plaintiff and its surety never were given Notices of Extension of Liquidations * * *
> b) That defendants did not comply with the requirements of 19 CFR § 159.12 in failing to state the reasons for the extensions; nor were there any valid reasons for the extensions.

(Pl.'s Mot. to Compel at 2.) Defendant opposed Ford's motion to compel, and in response noted "the substance of Customs' investigation is completely irrelevant to any legitimate issue regarding Customs' compliance with applicable statutory and regulatory requirements." (Def.'s Opp'n to Pl.'s Mot. to Compel at 2.) Several months later, Ford withdrew its motion to compel.

Ford moved for summary judgment and included in its arguments the claim that the eleven entries at issue should be deemed liquidated by operation of law one year after date of entry. *(See* Pl.'s Mem. in Supp. of Mot. for Summ. J. (Pl.'s Mot. for Summ. J.) at 43.) Ford argued the liquidations were "illegal, null, and void as a matter of law because there was no valid or legal reason to extend the liquidations." *(Id.* at 43 (initial capitalization modified).) "Customs had no legitimate purpose in extending the liquidations of the 11 entries," Ford continued, and assuming valid reasons did exist initially, "the length of the extensions in this case was clearly unreasonable and an abuse of discretion." *(Id.* at 48.)

Defendant opposed Ford's motion for summary judgment and filed a cross-motion for summary judgment. Before responding to Ford's allegation that Customs lacked a valid or legal reason to extend the liquidations, defendant stated:

> This claim was not raised in Ford's initial protest or in Ford's complaint. Instead of moving to strike the relevant portions of Ford's motion for summary judgment, the Government responds directly to Ford's arguments in order to demonstrate that summary judgment with respect to this issue is appropriate for the Government. If, however, the Court concludes that a trial is appropriate with respect to this claim, Ford should be required to file a motion to amend its complaint—and the Government should be permitted to oppose the motion on the grounds of prejudice.

(Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 22 n.12.)

In its reply, Ford rejected defendant's assertion that a motion to amend would be required. Ford argued paragraph twelve of the amended complaint was "clearly broad enough to encompass this contention, inasmuch as it is alleged therein that the alleged extensions of liquidations in the 11 entries in this case were illegal, which permits all possible arguments to be made in support of that claim." (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 39.) Ford argued it did not become apparent there was no legal basis for the extensions until discovery, and therefore, "[u]nder these circumstances, no Motion to Amend should be required." *(Id.)* The Court heard oral arguments on the parties' summary judgment applications on January 19, 1995. Ford moved to amend its complaint on March 24, 1995, in part to "to make it possible

to obtain the benefit in the instant case of *[Intercargo]."* (Pl.'s Mot. at 1.)[1]

In its application to amend pending before the Court, Ford seeks to add the following cause of action to the first amended complaint:

### THIRD CAUSE OF ACTION

\* \* \* \* \* \* \*

2. The alleged Extensions of Liquidations of the entries that are the subject of this case are illegal, null, and void for the following additional reasons:

a. Assuming that the alleged Notices of Extensions of Liquidations were in fact sent to Plaintiff and its Surety, the language therein is the same language which was held to invalidate the Extensions of Liquidations in the very recent decision in *[Intercargo].*

b. In addition, there was no legal basis for extending the liquidations in the subject entries, which meets the requirements set out in 19 U.S.C. Sec. 1504 (b) during the relevant 1985–1990 period at issue herein.

(Amendment to First Am. Compl. at 1–2.)

### CONTENTIONS OF THE PARTIES

A. *Plaintiff:*

Ford supports its application to amend the pleadings by first arguing the third cause of action or third claim is clearly within the scope of the allegations made by Ford in its protest and complaint because the "First Amended Complaint in this case, which alleges in general terms that the subject Extensions of Liquidations were illegal, invalid, null, and void under 19 U.S.C. Sec. 1504 (b) and Sec. 159.12 of the Customs Regulations (19 CFR Sec. 159.12) clearly encompasses Plaintiff's third claim." (Pl.'s Mot. at 3.) The original claim, Ford believes, "has within its orbit and scope *all possible arguments* in support of the claim that the Extensions at issue herein were invalid, including both claims now the subject of Plaintiff's Motion to Amend." (Pl.'s Reply to Def.'s Resp. (Pl.'s Reply) at 3.) There is no doubt, Ford maintains, the claims in the proposed amendment "clearly 'arose out of the conduct, transaction, or occurrence set forth [or attempted to be set forth] in the original pleading,' as required by Rule 15(c)." *(Id.* at 4 (quoting Rule 15(c)(2)).)

Second, Ford asserts its application to amend the complaint is timely because the "alleged reasons for the subject Extensions did not come to light until they were adduced in Discovery long after the First Amended

[1] In *Intercargo,* plaintiff argued the notices of extension of liquidation it received did not comply with the statute and regulations governing extensions and were invalid as they failed to include a statutory reason for the extensions. *Intercargo,* Slip Op. 95–37 at 4. The notices stated: "THIS IS A COURTESY NOTICE. THE LIQUIDATION OF THIS ENTRY HAS BEEN EXTENDED: ADDITIONAL TIME IS REQUIRED BY CUSTOMS TO PROCESS THIS TRANSACTION. NO ACTION IS NECESSARY ON YOUR PART UNLESS INFORMATION IS SPECIFICALLY REQUESTED BY CUSTOMS." *Id.* at 2. Judge Musgrave of this Court agreed with plaintiff holding the reason given was "not a clearly articulated statutory reason for extending liquidation," and therefore the extension was not valid under the law. *Id.* at 5.

Complaint was filed." (Pl.'s Mot. at 5.) Ford recounts the path of discovery in this action and contends "[i]t is an undisputed fact that Plaintiff did not become aware of the Defendant's grounds for the subject Extensions of Liquidations until December, 1992, when Defendant responded to a specific question in Plaintiff's Second Set of Interrogatories." *(Id.* at 4.) Furthermore, Ford states it was not until May 1994 that Ford became aware of two additional grounds defendant advanced for extending the liquidations in this case. *(Id.* (citation omitted).)

Finally, Ford submits defendant would suffer no prejudice should Ford's motion to amend be granted because the facts relevant to the third claim have been fully developed in the record.

> [T]he very extensive depositions and Interrogatories in this case dealt in great detail with respect to the nature of the Notices of Extensions of Liquidations, the grounds for the issuance of the Notices of Extensions of Liquidations, the mechanics of preparing, printing and mailing the Notices of Extensions of Liquidations, and the non-receipt of said Notices.

*(Id.* at 5.) Further, Ford contends defendant was on notice of the additional theory on which Ford bases its third cause of action as defendant "responded to this theory, in subsequent pleadings filed with the Court and through the testimony of Defendant's witnesses and other evidence presented in discovery." (Pl.'s Reply at 4–5.) Defendant can claim no surprise or prejudice from the proposed amendment to the complaint, Ford argues, given that defendant's counsel, the United States Department of Justice, was counsel of record in the *Intercargo* decision. *(Id.* at 6.) In conclusion, Ford maintains it "has established that the claims to be added herein were made without undue delay and Defendant has not established the existence of any prejudice to Defendant, which has known of these claims and has responded to them." *(Id.* at 10.)

## B. *Defendant:*

On a procedural note, defendant faults Ford's moving to amend its complaint pursuant to U.S. CIT Rules 15(b) and 15(d) and argues these rules are plainly inapposite. Rule 15(b) does not apply, defendant contends, because the Court has received no evidence regarding the issues raised in *Intercargo* and thus an amendment to conform to the evidence is inapplicable. (Def.'s Resp. at 2 n.2.) Similarly, defendant asserts the resort to Rule 15(d) is improper because "Ford's amended pleading fails to set forth 'transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" *(Id.* (quoting U.S. CIT R. 15(d)).) Therefore, defendant construes Ford's motion as one to amend the pleadings pursuant to Rule 15(a) and responds accordingly.

Defendant rejects Ford's attempt to amend its complaint to take advantage of the Court's decision in *Intercargo* and argues "not only is Ford's latest maneuver adverse to the interests of justice, but it is also barred by the statute of limitations and general principles governing

amendment of pleadings pursuant to Rule 15(a)." *(Id.* at 2 (footnote omitted).) Defendant argues Ford's proposed amendment is barred by the statute of limitations set forth in 28 U.S.C. § 2636, which requires Ford to challenge Customs' denial of its protest within 180 days after the date of mailing of notice of the denial of a protest. *See* 28 U.S.C. § 2636(a)(1) (1988). Because the third claim does not arise out of the "'conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading,'" defendant contends, the Court may not look to the date of the original pleading for statute of limitations purposes. *(Id.* at 2–3 (quoting U.S. CIT R. 15(c)(2)).) Defendant supports its argument by comparing the original complaint to the third claim set forth in the proposed amendment.

> Ford's original complaint focused exclusively upon (1) Ford's non-receipt of the notices extending the liquidation period, [Compl. ¶¶ 1–12], and (2) Ford's submission of entries containing clerical errors and their "acceptance by the appropriate Customs officials without comment." *Id.* ¶¶ 13–28. By contrast, Ford's proposed second amended complaint contains two entirely new claims—*i.e.,* that (1) the language contained in Customs notices extending the liquidation period is legally inadequate; and (2) Customs officials abused their discretion in extending the period of liquidation because the [sic] lacked proper grounds for the extensions pursuant to 19 U.S.C. § 1504.

*(Id.* at 3–4.) Defendant maintains "it would be unreasonable to conclude that the conduct, transactions, and occurrences set forth in Ford's second amended complaint are 'other aspects of the conduct, transactions, or occurrences set forth in [Ford's] original pleading.'" *(Id.* at 3 (quoting Charles A. Wright, Arthur R. Miller, & Mary K. Kane, 6A *Federal Practice and Procedure* (Wright & Miller) § 1497 at 93).) Thus, because the proposed amendment does not relate back to the date of the original pleading and the 180-day limitation period expired in March 1992, defendant argues, "this Court does not possess jurisdiction to entertain Ford's proposed second amended complaint." *(Id.* at 2 (footnote omitted).)

Defendant contends Ford's motion to amend should be denied in light of five considerations the Court should consider in deciding a motion to amend: (1) bad faith on the part of the movant; (2) undue delay in moving to amend; (3) prejudice to the nonmovant; (4) futility of the amendment; and (5) prior amendments to the complaint. *(Id.* at 9.) Defendant claims both Ford's bad faith and substantial prejudice to the defendant are demonstrated in defendant's argument concerning the statute of limitations. Defendant insists it would be prejudiced if Ford's motion to amend were granted because it would be put at an "extreme disadvantage in its ability to muster memories and documentary evidence" to defend itself against Ford's third claim. *(Id.)* Additionally, defendant suggests that to permit Ford to amend its complaint would be futile for two reasons: first, the new claims are barred by the statute of limitations

and second, even if the entries were liquidated by operation of law and Ford were to recover excess duties paid, Customs could still pursue a penalty action against Ford pursuant to 19 U.S.C. § 1592(d) and recover this sum. *(Id.* at 9 n.9.) Defendant also notes Ford already has amended its complaint.

· The most decisive factor, defendant claims, is Ford's undue delay in bringing this motion as "Ford has offered no excuse for the belated filing of its new claims other than the naked opportunism of its attempt to 'free ride' upon the litigation efforts of the completely unrelated *Intercargo* plaintiff." *(Id.* at 10.) Defendant asserts Ford cannot provide a satisfactory explanation for its delay given that "the facts underlying the new claims contained in the amended pleading were known at the time the original pleading was filed." *(Id.* (citations omitted).) To permit Ford to amend its complaint at this late juncture, defendant insists, is unfair to defendant and inefficient for the judicial system as it would allow the transformation of Ford's case into something entirely new.

DISCUSSION

Ford believes it is not necessary to amend the existing amended complaint because the complaint can be read broadly to include the proposed amendment. Nevertheless, Ford explains, it moves to amend "in an overabundance of caution." (Pl.'s Mot. at 3.) Arguably, the existing amended complaint may be viewed as not including the claims set forth in Ford's proposed amendment. Therefore, in the interest of fairness the Court will proceed under the presumption a motion to amend is appropriate.

It is within the discretion of the trial court to grant or deny a motion for leave to amend a complaint. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Intrepid v. Pollock,* 8 Fed. Cir. (T) 137, 141, 907 F.2d 1125, 1129 (1990) ("It is settled that the grant of leave to amend the pleadings * * * is within the discretion of the trial court.") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971)). The court must make a "*discretionary* decision, in the sense that the court weigh [ ] considerations such as undue delay, prejudice to the opposing party and the like." *Intrepid,* 8 Fed. Cir. (T) at 141, 907 F.2d at 1129.

A. *U.S. CIT Rule 15:*

Because a resolution of the pending motion turns on the application of the Court's Rule 15, it is helpful to have the relevant portions of the Rule at hand:

**Rule 15 Amended and Supplemental Pleadings.**

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been noticed for trial, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court

954

or by written consent of the adverse party; and leave shall be freely given when justice so requires* * *.

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amendment arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4 for service of the pleadings commencing the action, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

 * * * * * * *

(d) Supplemental Pleadings. Upon motion of a party, the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statements of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

U.S. CIT R. 15.

Initially, the Court considers defendant's contention that Ford's motion is deficient because it is raised pursuant to Rules 15(b) and 15(d), which, defendant argues, are inapposite to Ford's motion. The Court agrees this motion is not properly raised pursuant to Rule 15(b).

Rule 15(b) begins by stating "[w]hen issues not raised by the pleadings *are tried* by express or implied consent of the parties, they shall be treated * * * as if they had been raised in the pleadings." U.S. CIT R. 15(b) (emphasis added). The underscored language makes clear this Rule is to be applied to issues that have been tried by the parties. *See East Chilliwack Fruit Growers Co-Operative v. United States*, 11 CIT 104, 109, 655 F. Supp. 499, 504 (1987) ("CIT Rule 15(b) * * * applies essentially to evidence that is adduced during a trial in this [Court] and not to evidence adduced in another proceeding."). Given that a trial in this case is nowhere in sight, and the parties' motions for summary judgment are pending before the Court, it is premature to pronounce any issue in this action as having been tried. Thus, Rule 15(b) is not the proper vehicle by which to raise the pending motion.

Defendant also quarrels with Ford's resort to Rule 15(d) because defendant claims Ford has not set forth the transactions or occurrences or events that have occurred since the date of the pleading sought to be supplemented. Thus, in responding to Ford's motion defendant construes the motion as a Rule 15(a) and not a Rule 15(d) motion. Ford follows suit in its reply papers and defends its motion as if it were brought under Rule 15(a). The principal difference between Rules 15(a) and 15(d) is that Rule 15(d) describes a supplemental pleading as one "setting forth transactions or occurrences or events which have happened since the date of the pleading," whereas Rule 15(a) includes no description of what constitutes an amended pleading. Remarking on this difference, one commentator observed that by implication Federal Rules of Civil Procedure (FRCP) Rule 15(a) concerns matters occurring prior to the filing of the original pleading. *See* 6 Wright & Miller § 1473 at 521.[2] The Court agrees with defendant that Rule 15(d) is not suitable for this motion, and therefore the Court will consider the motion as having been properly raised pursuant to Rule 15(a).[3]

## B. *Application of Rule 15(a):*

By its terms, Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." U.S. CIT R. 15(a). In *Foman,* the Supreme Court held the requirement that leave be freely given must be balanced against several considerations protecting the rights of the opposing party. *See Foman,* 371 U.S. at 182. In an often-quoted passage, the Supreme Court stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent

[2] Because FRCP 15 and U.S. CIT R. 15 are substantially the same, it is appropriate to consider decisions and commentary on the FRCP for guidance in interpreting the Court's rules. *See Tomoegawa (U.S.A.), Inc. v. United States,* 15 CIT 182, 185–86, 763 F. Supp. 614, 617 (1991) (Re, C.J.).

[3] The Court observes the differences between Rules 15(a) and 15(d) are often ignored in practice. *See* 6A Wright & Miller § 1504 at 184–85 ("Indeed, the distinction between amended and supplemental pleadings is sometimes ignored completely.") (footnote omitted); *see also Westwood v. Cohen,* 838 F. Supp. 126, 132 (S.D.N.Y. 1993) ("The distinction [between Rules 15(a) and 15(d)] is hardly airtight. Inclusion of both * * * in Fed.R.Civ.P. 15 appears deliberately to create an overlap to avoid precisely the kind of controversy sought to be raised here. Any misnomer of the additions to the complaint as amendments rather than supplementation constitutes harmless error under Fed.R.Civ.P. 61 * * *.").

or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.; see also Saint Paul Fire & Marine Ins. Co. v. United States,* 16 CIT 633, 635, 795 F. Supp. 453, 455 (1992) (discussing *Foman)* (citations omitted). The criteria laid out in Foman—undue delay, undue prejudice to opposing party, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, and futility of amendment—provide the framework for the Court's examination of Ford's motion to amend.

Considering the first factor, undue delay, the Court finds Ford could have moved to amend its complaint during discovery when Ford became aware of defendant's reasons for extending the liquidations. The question here, however, is whether that delay was undue. *See Datascope Corp. v. SMEC, Inc.,* 962 F.2d 1043, 1045 (Fed. Cir. 1992) ("Although delay itself is an insufficient ground to deny amendment, if the delay is 'undue' the district court may refuse to permit amendment.") (citations omitted). Indeed, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3rd Cir. 1984) (citations omitted), *cert. denied,* 469 U.S. 1122 (1985) (quoted in *Datascope,* 962 F.2d at 1045). The view that delay becomes undue when it prejudices the opposing party is generally accepted. *See United States v. Mexico Feed & Seed Co.,* 980 F.2d 478, 485 (8th Cir. 1992) ("A district court may * * * in its discretion, allow amendments to pleadings even after unexcusable delay *if there is no prejudice to the other party.")* (citations omitted) (emphasis added); *Dooley v. United Technologies Corp.,* 152 F.R.D. 419, 425 (D.D.C. 1993) ("[A] motion to amend a pleading * * * may be denied if the delay causes undue prejudice to the opposing party.") (citation omitted); 3 James W. Moore, *Moore's Federal Practice* ¶ 15.08[4] at 15–76 n.12 (2nd ed. 1995 & Supp. 1994–95) (summarizing cases finding that delay alone, regardless of its length, is not enough to bar amendment if the other party is not prejudiced). Thus, to determine whether Ford's delay in moving to amend is undue, the Court turns to the second factor, undue prejudice, to examine whether defendant would be unduly prejudiced by an amendment to the amended complaint.

To show prejudice, defendant "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendment[] been timely." *Cuffy v. Getty Ref. & Mktg. Co.,* 648 F. Supp. 802, 806 (D. Del. 1986) (citation omitted) (quoted in *Foremost-McKesson Inc. v. Islamic Republic of Iran,* 759 F. Supp. 855, 858 (D.D.C. 1991)). In this case, defendant faces no such problems as the amendment is based on the same transactions or

occurrences or events as the original complaint. *See infra* part C. The documents and information and deposition testimony produced thus far in this case relating to the existing complaint will likely have bearing on a second amended complaint. In addition, the Court will permit the parties, if they so desire, to reopen discovery to elicit further evidence on the third claim. Thus, defendant will have the same opportunity to present facts and evidence after the amendment as it did before the amendment. Because defendant will not be deprived of the opportunity to present facts or evidence in its defense, the Court perceives no undue prejudice to defendant.

Defendant, however, also believes it would be prejudiced by "its inability to muster memories and documentary evidence in support of its defense" against Ford's third claim. Ford responds that much of the evidence necessary to adjudicate the third claim is fully developed in the record and the parties' motions for summary judgment and therefore no additional evidence is required. At this juncture, the Court takes no position on whether evidence relevant to the third claim is on the record or whether further discovery may be necessary. This Court is not convinced, however, that the prospect of potential discovery difficulties in this case is sufficient to demonstrate actual prejudice militating against Ford's motion to amend. *See United States* ex rel. *Maritime Admin. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 889 F.2d 1248, 1255 (2nd Cir. 1989) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.") (citation omitted). As one court aptly stated, the "so-called prejudice of which the defendants complain appears to reflect no more than the general difficulties facing all parties in the course of protracted litigation." *United States v. Hudson,* 152 F.R.D. 6, 8 (D. Conn. 1993). For these reasons, the Court finds defendant is not unduly prejudiced by Ford's delay in moving to amend and thus Ford's motion was not filed after undue delay.

The Court perceives nothing in the record demonstrating the other factors—bad faith or dilatory tactics, repeated amendments, and futility—are present in this case. Defendant raises no persuasive evidence that Ford's motion smacks of bad faith or is imposed for purposes of delay. Defendant correctly notes that Ford has already amended its complaint once before, but this alone does not convince the Court that Ford has abused the amendment process as there is no evidence Ford has repeatedly failed to cure deficiencies in its complaint. *See Gutierrez v. Vergari,* 499 F. Supp. 1040, 1044 (S.D.N.Y. 1980) ("It is clear that a repeated failure to cure deficiencies in the complaint by amendments previously allowed may provide a basis for the trial judge to exercise his or her discretion to deny a motion for leave to amend.") (citing *Foman,* 371 U.S. at 182). The final factor, futility, may be discounted as defendant has produced no evidence that allowing Ford's third claim would be futile other than to raise a statute of limitations argument, which is dis-

cussed and rejected below, and a spurious argument concerning a potential penalty action.[4]

### C. *The Relation Back of the Third Claim to the Original Complaint:*

Defendant argues Ford's motion to amend should be denied because the third claim does not relate back to the original pleadings and therefore is barred by the statute of limitations. The Court disagrees with defendant and holds the claims raised in Ford's motion to amend relate back to Ford's original complaint and therefore are not barred by the statute of limitations.

Rule 15(c) provides that an amendment relates back to the original pleading when "the claim or defense asserted in the amendment arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." U.S. CIT R. 15(c)(2). One purpose of Rule 15(c) is to ensure the original pleading gives defendant fair notice of the claim raised in the amendment. As explained by the Supreme Court:

> The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide. Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 150 n.3 (1984) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (further citation omitted). Thus, the Court's inquiry focuses on whether defendant has fair notice of the claims in Ford's proposed amendment and the grounds upon which they rest. The Court holds Ford's original complaint and Ford's description of its allegations in its discovery and summary judgment papers gave defendant fair notice of the claims now set forth in the proposed amendment.

Ford's original complaint alleged "there were no legal extensions or suspensions of the liquidations of the subject 11 entries covering the engines and transmissions" and that "the purported liquidations in 1989 * * * are illegal, null, and void." It is clear to the Court that Ford is challenging the *legality* of the extensions or suspensions of liquidation of the entries at issue. Ford's proposed amendment simply delineates an alternative legal theory upon which Ford seeks to prove its original allegation that the extensions or suspensions were not legal and the

---

[4] Defendant claims Customs could pursue a penalty action against Ford under 19 U.S.C. § 1592(d) to recover any sum Ford receives should it prevail in this action. Therefore, defendant argues, to allow Ford to amend would be futile. The Court finds defendant's argument at least unconvincing and at most irrelevant given the uncertainty that Customs will initiate a penalty action against Ford let alone prevail in such an action. Amendments usually are deemed futile because they are time-barred, *see Bonerb v. Richard J. Caron Found.,* 159 F.R.D. 16, 18 (W.D.N.Y. 1994) (citations omitted), do not cure the defect in the pleadings, *see Shell Oil Co. v. Aetna Casualty & Sur. Co.,* 158 F.R.D. 395, 403 (N.D. Ill. 1994), or are prima facie legally insufficient, *see Clark v. Exxon Corp.,* 159 F.R.D. 26, 28 (M.D. La. 1994) (citation omitted).

1989 liquidations were "illegal, null, and void." Furthermore, as the originator of the purported notices of extension, defendant is in a better position than Ford to know the content of the notices and whether they conform to the legal requirements of Customs regulations.[5] Ford, on the other hand, claims it never received the alleged notices, and therefore had no way of knowing the content of such notices until defendant disclosed as much in discovery.

In discovery, Ford's interrogatories and its motion to compel again revealed to defendant the nature and scope of the claims now raised in Ford's proposed amendment. For example, in its papers to compel discovery, Ford characterized one of the causes of action as alleging "defendants did not comply with the requirements of 19 CFR § 159.12 in failing to state the reasons for the extensions; nor were there any valid reasons for the extensions." The first part of this characterization effectively describes the dispositive issue in *Intercargo* and relies on the same regulation the Court relied on in *Intercargo* to find the notices in that case legally invalid. *See Intercargo,* Slip Op. 95–37 at 5. Therefore, when Ford states in its proposed amendment that the extensions "are illegal, null, and void," because, assuming the notices were sent to Ford and its surety, "the language therein is the same language which was held to invalidate the Extensions of Liquidations in *[Intercargo],"* defendant cannot properly claim it did not have fair notice of this issue.

In its motion for summary judgment, Ford again summarized one of the claims stating, the liquidations were "illegal, null, and void as a matter of law because there was no valid or legal reason to extend the liquidations." This language is substantially the same as that in Ford's proposed amendment wherein Ford alleges, "[T]here was no legal basis for extending the liquidations in the subject entries, which meets the requirements set out in 19 U.S.C. Sec. 1504 (b)." Moreover, in its opposition to Ford's motion for summary judgment, defendant agreed the Court could consider this issue for purposes of deciding the motions for summary judgment. Thus, defendant will not now be heard to claim it would be prejudiced by lack of fair notice.

It is evident that through discovery and Ford's summary judgment papers defendant was alerted to the claims now raised by Ford's instant motion to amend and thus defendant cannot properly insist it would be prejudiced by their inclusion in the complaint. *See Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.,* 804 F.2d 787, 795 (2nd Cir. 1986) ("A party cannot claim unfair surprise when it has been provided with notice of the subject of the amendment to a complaint, by discovery or documents, well in advance of the actual amendment.") (citing *SEC v. Rapp,* 304 F.2d 786, 790 (2nd Cir. 1962)); 6A Wright & Miller § 1497 at 92–93 (commenting some courts "have held that it is sufficient if the opposing party was made aware of the matters to be raised by the

---

[5] It appears defendant was aware the legality of the alleged notices was an issue when it opposed Ford's motion to compel stating the information requested was "irrelevant to *any legitimate issue regarding Customs' compliance with applicable statutory and regulatory requirements."* (Def.'s Opp'n to Pl.'s Mot. to Compel at 2 (emphasis added).)

amendment from sources other than the pleadings, a position that seems sound since it is unwise to place undue emphasis on the particular way in which notice is received.") (footnote omitted). The Court finds defendant has received "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley,* 355 U.S. at 47. Accordingly, the Court holds the third claim as set forth in Ford's motion to amend relates back to the original complaint and is not barred by the statute of limitations.

## CONCLUSION

The Court construes Ford's pending motion as a motion to amend pursuant to Rule 15(a). The Court finds nothing in the record demonstrating Ford has acted in bad faith or has engaged in dilatory tactics by moving to amend its complaint at this juncture. Although Ford has delayed coming forward with its motion to amend, the Court finds no undue delay and finds defendant is not prejudiced by Ford's delay. The Court observes no evidence that Ford has abused the amendment process by repeatedly failing to cure defects in its pleadings and finds that Ford's proposed amendment is not futile. Additionally, the Court holds the proposed amendment to the amended complaint relates back to the original pleading and therefore the amendment is not barred by the statute of limitations. The Court accepts the proposed amendment as filed and the existing amended complaint is deemed amended as the second amended complaint. Defendant shall answer the second amended complaint on or before August 7, 1995, and discovery, if any, relevant to the third cause of action in the second amended complaint shall be completed as soon as possible, but no later than August 28, 1995. The parties' applications for summary judgment are continued for the sole purpose of receiving evidence relevant to the third cause of action in the second amended complaint.